IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

**CONSOLIDATED RAIL CORPORATION**
2001 Market Street
Philadelphia, PA  19103

                                 Plaintiff,

                     v.

**JAMES T. RAY,**
**for the Estate of HAROLD F. BOYD, deceased**
626 Streamwater Drive
Blacklick, OH  43004

                              Defendant

:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO. 07-

---

## COMPLAINT FOR DECLARATORY RELIEF

Consolidated Rail Corporation ("Conrail"), by and through its undersigned counsel, brings this action for Declaratory Relief in order to stay defendant James Ray's action filed in the Court of Common Pleas Cuyahoga County, Ohio, and to invoke this Court's original and exclusive jurisdiction as the successor to the Special Court-Regional Rail Reorganization Act over matters concerning claims of successor liability asserted against Conrail.  In support thereof, Conrail avers as follows:

### THE PARTIES

1.     Plaintiff Conrail is a corporation organized under the laws of the Commonwealth of Pennsylvania pursuant to Section 301 of the Regional Rail Reorganization Act of 1973, as amended ("Rail Act", 45 U.S.C. § 701 *et seq*.), and has its principal place of business at 2001 Market Street, Philadelphia, Pennsylvania 19103.

2.     Defendant James Ray ("Defendant") is the Executor of the Estate of Harold Boyd (hereinafter "Decedent").  Defendant is a resident of Ohio.

## JURISDICTION

3.    This Court has original and exclusive jurisdiction over this action by virtue of Sections 209(e) and 209(g) of the Rail Act, 45 U.S.C. § 719(e), (g), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## THE OHIO ACTION

4.    On May 8, 2002, Defendant filed a complaint in the Court of Common Pleas of Cuyahoga County, Ohio (Ray v. A-Best Prods. Co. Inc., et al., no. CV-02-468660) (hereinafter the "Ohio Action") against numerous defendants, including Conrail.  Defendant alleges that during the course of Decedent's employment with the Erie Lackawanna Railroad Company (hereinafter "Erie Lackawanna"), Decedent was negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (hereinafter "FELA"). Defendant's complaint in the Ohio Action is attached hereto as Exhibit A.

5.    On May 21, 2007, Judge Spellacy of the Cuyahoga County Court of Common Pleas heard oral argument.

6.    The Ohio Action seeks to impose successor liability on Conrail in connection with decedent's employment with Erie Lackawanna, by virtue of the erroneous belief that Conrail is the legal successor-in-interest to the Erie Lackawanna and is therefore liable for any injuries arising from Decedent's employment with Erie Lackawanna.

## THE RAIL ACT AND THE CONVEYANCE OF
## ERIE LACKAWANNA'S ASSETS TO CONRAIL

7.    Conrail was created as a federally-funded takeover of the major railroad companies in the Northeast through the Rail Act, 45 U.S.C. 701, *et seq.*

8.    Pursuant to Section 206 of the Rail Act, 45 U.S.C. § 716, the United States Railway Association ("USRA") developed the Final System Plan ("Plan") in which it designated

that certain assets of Erie Lackawanna and other Northeast railroad companies were to be transferred to Conrail.

9.      Pursuant to Section 209(c) of the Rail Act, 45 U.S.C. § 719(c), the USRA certified to this Court the rail properties of Erie Lackawanna designated in the Plan were to be conveyed to Conrail.

10.      Pursuant to Section 303 of the Rail Act, 45 U.S.C. § 743, this Court issued a Conveyance Order filed March 25, 1976 ("Conveyance Order") directing the trustees of Erie Lackawanna to execute documents, effective April 1, 1976, conveying certain of Erie Lackawanna's rail properties to Conrail "free and clear of any liens or encumbrances" under Section 303(b)(2) of the Rail Act, 45 U.S.C. § 743(b)(2). The Conveyance Order is attached hereto as Exhibit B.

11.      This Court has reinforced Congress's intent in declaring that the Rail Act provided Conrail with a legal and financial "fresh start" to commence a financially viable railroad operation.  See Penn Central Corp. v. United States, 862 F. Supp. 437, 446 (S.C.R.R.R.A. 1994); Consolidated Rail Corp. v. Commonwealth of Pa., Dep't of Gen. Svcs., No. 97-RR-01 (CRW) (D.D.C. 1997).

12.      In light of the Rail Act's "fresh start" policy, this Court has concluded that the conveyance shields Conrail from successor liability arising from the acts or omissions of Erie Lackawanna and the other railroads which conveyed their rail properties to Conrail.  See Consolidated Rail Corp. v. United States, 883 F. Supp. 1565, 1576-77 (S.C.R.R.R.A. 1995); Penn Central Corp., supra, 862 F. Supp. at 446.

13.    Conrail did not come into existence until April 1, 1976, when it was conveyed Erie Lackawanna's and other Northeast railroad companies' assets pursuant to the Rail Act.

14.    While the Defendant claims that Decedent was exposed to asbestos both during his employment with Erie Lackawanna and during the brief period he was employed by Conrail, there is no evidence to support the claim of exposure during the Conrail employment.

15.    Pursuant to Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2), this Court has original and exclusive jurisdiction over actions involving the interpretation and implementation of conveyance orders entered by this Court and documents executed in accordance with those orders.

16.    Pursuant to Section 209(g) of the Rail Act, 45 U.S.C. § 719(g), this Court may stay or enjoin any action or proceeding in any State or Federal Court, other than the United States Supreme Court, if such action is contrary to the provisions of the Rail Act or any orders of this Court pursuant thereto.

17.    This Court has affirmed that it is the final arbiter of the correct interpretation of the Rail Act, the Final System Plan, and the orders and conveyance documents executed pursuant thereto.  See Consolidated Rail Corp., supra, 883 F. Supp. 1565.

18.    To preserve its original and exclusive jurisdiction under the Rail Act, this Court has the power to stay FELA actions against Conrail which seek to impose successor liability on Conrail based upon alleged actions or omissions of Erie Lackawanna or other railroad companies that conveyed their rail assets to Conrail.

19.    Accordingly, the Ohio Action directly contravenes the Rail Act, this Court's Conveyance Order and this Court's prior holdings.  Conrail cannot be held liable as a successor to Erie Lackawanna.

20.    There is a case of actual controversy between Conrail and Defendant that is within this Court's original and exclusive jurisdiction, and that controversy has ripened to the point at which an affirmative declaration from this Court is needed.  This Court is authorized, pursuant to the Declaratory Judgment Act, to declare the rights and other legal relations of the parties.  See 28 U.S.C. § 2201(a).

21.    Given that the Rail Act and NRSA provide for exclusive jurisdiction in this Court for claims seeking to assert successor liability against Conrail, the District Court of the United States District Court for the District of Columbia sitting as the Special Court is the only Court that can provide the declaratory relief Conrail seeks.

22.    Direct liability cannot be asserted against Conrail for actions of Erie Lackawanna.

## COUNT I

23.    Conrail incorporates by reference paragraphs 1 through 22 above as though full set forth herein.

24.    Pursuant to the Rail Act, the Final System Plan established by the USRA, and the order of this Court directing the conveyance of Erie Lackawanna's assets to Conrail effective April 1, 1976, Conrail may not be held liable as a successor in liability for the alleged acts or omissions of Erie Lackawanna.

25.    No evidence supports the assertion that Decedent was exposed to asbestos during employment with Conrail.

WHEREFORE, Conrail respectfully requests, as relief under Count I of this action:

      (a)    that this Court stay the Ohio Action pending the resolution of this action;

      (b)    that this Court enter a final order declaring that Conrail has no liability as a successor in liability of Erie Lackawanna;

      (c)    that this Court enjoin Defendant from seeking to hold Conrail liable for any acts or omissions of Erie Lackawanna;

      (d)    that this Court grant Conrail such other relief as may be appropriate under Count I.

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665
carpenterc@pepperlaw.com

Attorney for Plaintiff,
Consolidated Rail Corporation

June 26, 2007

CIVIL ACTION   COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

D59 CM

| SUMMONS NO. |
| 2609618 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

JAMES RAY
VS
·BEST PRODUCTS COMPANY, INC., ET AL

**PLAINTIFF**

**DEFENDANT**

**SUMMONS**

PENN CENTRAL   CORPORATION
AKA AMERICAN PREMIER UNDERWRITERS
INC
1635 MARKET STREET RM 1120
PHILADELPHIA PA 19103-0000

You have been named defendant in a complaint
(copy attached hereto) filed in Cuyahoga County
Court of Common Pleas, Cuyahoga County Justice
Center, Cleveland, Ohio 44113, by the plaintiff
named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service of
this summons upon you, exclusive of the day of
service.

**Said answer is required to be served on:**



Plaintiff's Attorney

JOHN J DUFFY
23823 LORAIN RD. #270

NORTH OLMSTED, OH 44070-0000

Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

**Case has been assigned to Judge:**

RICHARD-ASBEST MCMONAGLE
Do not contact judge. Judge's name is given for
attorney's reference only.

GERALD E. FUERST
Clerk of the Court of Common Pleas

| DATE |
| May 8, 2002 |

By_____
Deputy

COMPLAINT FILED    04/23/2002

PENN CENTRAL   CORPORATION
1635 MARKET STREET RM 1120
1635 MARKET STREET RM 1120
PHILADELPHIA PA 19103-0000

MSN130

# IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

(ASBESTOS - WRONGFUL DEATH)
(TRIAL BY JURY DEMANDED)

**JAMES RAY, Executor of the
Estate of HAROLD BOYD, Deceased,**

      **Plaintiff,**

vs.

CASE NO. _____

**A-BEST PRODUCTS COMPANY, INC.**
in its own right and as
successor-in-interest to
Asbestos Products Company
c/o Carolyn M Chapel
Weston, Hurd, Fallon, Paisley & Howley, L.L.P.
2500 Terminal Tower
50 Public Square
Cleveland, OH  44113-2241

**ABB, INC.**
106 Dee Drive
Charleston, WV  25311

**ABB, Ltd.**
c/o Richard M. Burt
Vice President and General Counsel
Asea Brown Boveri, Ltd.
501 Merritt 7
Norwalk, CT  06856

**ABB, Ltd.**
P.O. Box 8131
Affolternstrasse 44 CH-8050
Zurrich, Switzerland
011-41-1-317-7111

**ALLIED GLOVE CORPORATION,**
P.O. Box 2126,
Milwaukee, WI 53201

**ALLIED SIGNAL, INC**
in its own right and as successor-in-interest to
Allied Corporation
c/o CT Corporation System – Statutory Agent
1300 E. Ninth Street, #1010
Cleveland, OH 44114

**AMERICAN OPTICAL CORPORATION**
c/o CT Corporation System
Statutory Agent
101 Federal Street
Boston, MA 02110

**AMERICAN STANDARD, INC.,** and its division,
in its own right and as successor to Westinghouse Airbrake and/or WABCO
P.O. Box 6820
One Centennial Avenue
Piscatawey, NJ 08855-6820

and

**AMERICAN STANDARD, INC.**
c/o C.T. Corporation System
441 Vine Street, #3810
Cincinnati, OH 45202

**ANCHOR PACKING COMPANY**
408 Gallimore Dairy Road
Greensboro, NC 27409

**A.O. SMITH CORPORATION**
in its own right and as
successor-in-interest to
The Clark Controller Company and
A.O. Smith Corporation
c/o Prentice-Hall Corporation System
380 South 15th Street
Columbus, OH 43215

**ARGO PACKING COMPANY,**
Box 66
Oakmont, PA 15139

**A.W. CHESTERTON COMPANY**
225 Fallon Road,
Stoneham, MA 02180

**BLH, INCORPORATED,** in its own
right and as successor to
Baldwin-Lima-Hamilton Corporation
c/o C.T. Corporation System
123 S. Broad Street
Philadelphia, PA 19103

**THE B.F. GOODRICH COMPANY, INC.**
c/o CT CORPORATION SYSTEM – STATUTORY AGENT
1300 East Ninth Street, #1010
Cleveland, OH 44114

**BOMBARDIER, INC.,** successor-in-interest
to American Locomotive Company
101 Park Avenue
Suite 2609
New York, New York 10178

**BONDEX INTERNATIONAL, INC.**
c/o Paul A. Granzier
2628 Pearl Road
Medina, OH 44256

**BORG-WARNER AUTOMOTIVE, INC.**
200 S. Michigan Avenue
Chicago, IL 60604

**BUDD COMPANY** and its division
Continental-Diamond Fibre Co.
A Pennsylvania Corporation
One Red Lion Road
Philadelphia, PA 19115

**CERTAINTEED CORPORATION**
750 E. Swedesford Road
Valley Forge, PA 19482-0101

**CHEVRON U.S.A.**
Corporate Secretary Dept.
575 Market Street, Room 3828
San Francisco, CA 94105

**COMBUSTION ENGINEERING, INC.**
c/o R. Kenneth Willman, Esquire
Willman & Arnold
705 McKnight Park Drive
Pittsburgh, PA  15237

**CONGOLEUM CORP.**
3705 Quaker Bridge Road
Mercerville, NJ  08619

**CONSOLIDATED RAIL CORPORATION**,
individually and as
Successor-in-interest to the
Erie Lackawanna Railroad
and the Penn Central Railroad
Two Commerce Square
2001 Market Street
Philadelphia, PA 19101-1416

**CRANE CO.**
c/o C T Corporation System- Statutory Agent
1300 E. Ninth Street, #1010
Cleveland, OH 44114

**CSX CORPORATION**
901 E. Cary Street
Richmond, VA 23219

**CSX TRANSPORTATION, INC.**
500 Water Street
Jacksonville, FL 32202

**DEVCON CORPORATION**
30 Endicott Street
Danvers, MA  01923

**DURABLA MFG. CO.,**
in its own right and as successor to Durabla Canada, Ltd.
1400 Sheree Boulevard,
P.O. Box 700, Lionville, PA
19341-1231

**DURAMETALLIC CORP.**
2104 Factory Street
Kalamazoo, MI  49001

**DUROX EQUIPMENT CORPORATION**
c/o Robert C. Smykal
12351 Prospect Road
Strongsville, OH 44136

**EATON CORPORATION**
Successor in interest to Cutler-Hammer, Inc
An Ohio Corporation
1111 Superior Avenue, S.E.
Cleveland, OH 44114

**ELOF HANNSON, INC.**
565 Taxter Road
Elmsford, NY  10523

**FAIRBANKS MORSE**
Four Coliseum Center
2730 West Tyvola Road
Charlotte, NC  28217-4578

**FLINTKOTE COMPANY**
Three Embarcadero Center
Suite 1190
San Francisco, CA  94111-4047

**FOSTER WHEELER CORPORATION**
8 Peachtree Hill Road
Livingston, NJ  07039

**FOSTER WHEELER ENERGY CORPORATION**
c/o J.F. Boyland
Perryville Corporation Park
Clinton, NJ  08809-4000

**THE GAGE COMPANY**
formerly Pittsburgh Gage & Supply
c/o CT Corporation System – Statutory Agent
1300 E. Ninth Street, #1010
Cleveland, OH  44114

**GARLOCK, INC.,**
1666 Division Street,
Palmyra, NY 14522

**GENERAL MOTORS, INC.**
General Motors Building
Detroit, MI 48202

**GEORGE V. HAMILTON, INC.**
River Avenue
McKees Rocks, Pennsylvania 15136

**THE GOODYEAR TIRE & RUBBER COMPANY,**
c/o James Boyazis, Agent,
1144 E. Market
Street, Akron, OH 44316

**GORMAN-LAVELLE PIPING CORP.**
c/o S.S. CAPES
120 Leader Building
Cleveland, OH 44114

**GREENE TWEED & CO.**
P.O. Box 305
Detwiller Road
Kulpsville, Pennsylvania 19443

**H.B. FULLER CO.,**
in its own right and its division Foster Products Corporation,
2400 Energy Park Drive
St. Paul, Minnesota 55108

**INGERSOLL-RAND**
c/o C.T. Corporation System – Statutory Agent
1300 E. Ninth Street, #1010
Cleveland, OH 44114

**JOHN CRANE, INC.**
6400 West Oakton
Morton, Grove IL 60053

**KENTILE FLOORS, INC.,**
c/o Sanders W. Gropper
G&K Consultants, LLC
31 E. 28th Street, 8th Floor
New York, NY 10016

**MAGNETEK, INC. AND MAGNETEK CONTROLS, INC.**
26 Century Boulevard, Suite 600
Nashville, TN  37214

**MARTIN MARIETTA TECHNOLOGIES, INC.,**
a Lockheed Martin Company,
(Formerly known as Martin Marietta Corporation)
6801 Rockledge Drive
Bethesda, MD  20817

**METROPOLITAN LIFE INSURANCE COMPANY**
a/k/a **METROPOLITAN INSURANCE COMPANY**
One Madison Avenue
New York, New York  10010-3690

**MOBIL OIL CORP.**
3325 Gallows Road
Room 7D1740
Fairfax, VA  22037

**NEW YORK AIR BRAKE CORPORATION**
A Delaware Corporation
c/o C. T. Corporation System
Carew Tower
Cincinnati, OH 45202

**NORFOLK SOUTHERN CORPORATION**
Three Commercial Place
Norfolk, VA 23510

**NORFOLK SOUTHERN RAILWAY CO.**
Three Commercial Place
Norfolk, VA 23510-2191

**OSRAM SYLVANIA, INC.**
in its own right and as successor to
GTE PRODUCTS CORPORATION
THE CLARK CONTROLLER COMPANY and
A.O. SMITH CORPORATION
c/o CT Corporation System – Statutory Agent
1300 E. Ninth Street, #1010
Cleveland, OH  44114

**OWENS-ILLINOIS, INC.,**
One SeaGate
Toledo, OH 43659

**PATRIOT SENSORS & CONTROLS CORPORATION**
in its own right and as successor in interest to
Magnetek, Inc. and MagneTek Controls, Inc.

**PENN CENTRAL CORPORATION**
a/k/a AMERICAN PREMIER
UNDERWRITERS, INC.
1635 Market Street, Room 1120
Philadelphia, PA 19103

**PNEUMO-ABEX, CORPORATION,**
Successor-in-interest to Abex, Inc. and
Pneumo-Abex Corporation in its own right
Liberty Lane
Hampton, NY 03842

**PULLMAN STANDARD, INC.**
c/o The Prentice-Hall Corp. System, Inc.
100 Pine Street
Harrisburg, PA 17108

**RAILROAD FRICTION PRODUCTS
CORPORATION**
A North Carolina Corporation
13601 Laurinburg Maxtion Airport Road
Laurinburg, NC 28352

**RECORD INDUSTRIAL CO.**
c/o Catherine M. Tierney
Technical Claims Assistant
Clair Odell Group
3025 Chemical Road, Suite 200
Plymouth Meeting, PA 19462-1737

**RILEY STOKER CORPORATION**
c/o C.T. Systems Corp.
815 Superior Ave. NE
Cleveland, OH 44114

**ROBERTSON,** formerly
H.H. ROBERTSON COMPANY
400 Holiday Drive
Pittsburgh, PA 15220

**ROCKWELL INTERNATIONAL CORP.**
c/o Law Department
1 Allen-Bradley
Mayfield Heights, OH  44124-6107

**RPM INC.**, in its own right and
as successor to Republic Powdered Metals, Inc.,
Bondex International, Inc. and Proko Industries
c/o Paul A. Granzier
2628 Pearl Road
P.O. Box 777
Medina, OH  44258

**SAFETY FIRST INDUSTRIES, INC.**,
also known as Safety First Supply of Canada, Ltd.
successor-in-interest to Safety First Supply
c/o Joseph R. Schaper, Esquire
Heintzman, Warren, Wise & Fornella, P.C.
35th Floor, Gulf Tower
707 Grant Street
Pittsburgh, PA  15219

       and

**SAFETY FIRST INDUSTRIES, INC.**,
also known as Safety First Supply of Canada, Ltd.
successor-in-interest to Safety First Supply
c/o Richard M. Grudzinski, Sr. Mgr.
PEAT, MARWICK, THORNE, INC.
Commerce Court West
P.O. Box 31
Toronto, Ontario, Canada
M5L 1B2

       and

**SAFETY FIRST INDUSTRIES, INC.**,
also known as Safety First Supply of Canada, Ltd.
successor-in-interest to Safety First Supply
c/o Ms. Christine Wendt
The Travelers Companies
Special Liability Group
P.O. Box 17283
Baltimore, MD  21203-7283

       and

**SAFETY FIRST INDUSTRIES, INC.,**
also known as Safety First Supply of Canada, Ltd.
successor-in-interest to Safety First Supply
c/o John A. Valenti, Esquire
BENOS, CUMMINGS, MANN & VALENTI
8th Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, OH  44115

        and

**SAFETY FIRST INDUSTRIES, INC.,**
also known as Safety First Supply of Canada, Ltd.
successor-in-interest to Safety First Supply
c/o Secretary of State
180 E. Broad Street, 16th Floor
Columbus, OH  43215

**THE SAGER CORPORATION,**
c/o Richard Polley, Esquire
Dickie, McCamey & Chilcote
400 Two PPG Place
Pittsburgh, PA  15222

**SEALITE, INC.**
c/o Kathleen Courtsl
1900 Embarcadero
No. 303
Oakland, CA  94606-5227

**SEPCO CORPORATION**
c/o Peter Churm or
Kenneth J. Holland
c/o The Fluorocarbon Company
7301 Orangewood Avenue
Garden Grove, CA  92841-1411

**SQUARE D**
1415 South Roselle Road
Palatine, IL  60067

**20th CENTURY GLOVE CORP. OF
TEXAS**, a/k/a GUARD LINE, INC.
P.O. Box 1030-A
Atlanta, TX  75551

**UNION CARBIDE CORPORATION**
39 Old Ridgebury Road
Danbury, CT  06817

**UNIROYAL, INC.**, a/k/a **UNIROYAL**
**GOODRICH TIRE CO.** f/k/a United States Rubber Company
70 Great Hill Road
Naugatuck, CT  06770

**VAPOR CORPORATION**
c/o C.T. Corporation System
1636 Market Street
Philadelphia, PA 19103

**VIACOM, INC.**, successor by merger to
CBS Corporation, f/k/a Westinghouse Electric Company
c/o Eckert, Seamans Case Management & Technology Center
707 Grant Street, 5th Floor
Pittsburgh, PA  15219

**WHEELER PROTECTIVE APPAREL, INC.**
c/o Robert W. Wilkinson, Esq.
P.O. Box 1618
Pascagoula, MS  39568

**ZURN INDUSTRIES, INC.**
c/o C.T. Corporation System – Statutory Agent
1300 E. Ninth Street, #1010
Cleveland, OH 44114

**JOHN DOES 1-100**
Manufacturers, Sellers or
Installers of Asbestos-Containing
Products.

      Defendants.

## COMPLAINT

1. This Complaint is filed pursuant to the Standing Order Regarding Asbestos Personal Injury Complaints.  The Plaintiff, James Ray, is a competent adult individual residing at 626 Streamwater Drive, Blacklick, Ohio 43004.  James Ray is the Executor of the Estate of Harold Boyd, Deceased.

## CLAIM I – FEDERAL EMPLOYERS' LIABILITY ACT

2. Defendant, Consolidated Rail Corporation, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, whose principal place of business and address for service of process is Two Commerce Square, 2001 Market Street, Philadelphia, Pennsylvania 19101-1416.  Consolidated Rail Corporation is a successor in interest to the Erie Railroad, the Erie Lackawanna Railroad and the Penn Central Transportation Company and as such is responsible to former employees of those railroads under the Federal Employers' Liability Act.

3. Defendant, Penn Central Corporation, a/k/a American Premier Underwriters, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, whose address for service of process is c/o C.T. Corporation System, 1635 Market Street, Room 1120, Philadelphia, Pennsylvania 19103.   Penn Central Corporation, a/k/a American Premier Underwriters, Inc., is the successor in interest to the Erie Railroad, the Erie Lackawanna Railroad, Penn Central Transportation Company, the Pennsylvania Railroad and the New York Central Railroad and as such is responsible to former employees of those railroads under the Federal Employers' Liability Act.

4. Defendants, CSX Corporation, CSX Transportation, Inc., Norfolk Southern Corporation and Norfolk Southern Railway Co. are successors to the Erie Railroad and the Erie

Lackawanna Railroad and as such are responsible to former employees of that railroad under the Federal Employer's Liability Act.

5. Suit against the above-mentioned railroad defendants is brought pursuant to Acts of Congress known as the Federal Employers' Liability Act, Title 45 U.S.C. Secs. 51-60; the Federal Safety Appliance Acts, 45 U.S.C. Secs. 1-16; and the Boiler Inspection Acts, 45 U.S.C. Secs. 22-34.

6. At all times material hereto, the railroad defendants and their predecessors were engaged in interstate commerce as common carriers by railroad operating a line and system of railroads in the State of Ohio, the Commonwealth of Pennsylvania and other states of the United States of America.

7. At the time and place hereinafter mentioned, the acts of omission and commission causing injuries to the Decedent were done by the defendants and/or the defendants' predecessors, their agents, servants, workmen and/or employees acting in the course and scope of their employment with and under the direct and exclusive control of the defendants or their predecessors.

8. At the time and place hereinafter mentioned, the Decedent was employed by defendants and/or defendants' predecessors and was acting in the scope of his employment by defendants and/or defendants' predecessors and was engaged in the furtherance of interstate commerce within the meaning of the Federal Employers' Liability Act.

9. The injury, disability and death of Plaintiff's decedent, who worked as an employee of the defendants and/or defendants' predecessors, were caused by his exposure to asbestos.

10. All the property, equipment and operations involved in this occurrence were owned and/or under the direct and exclusive control of the defendants and/or defendants' predecessors,

their agents, servants, workmen and/or employees.

11. Decedent's exposure to asbestos began in 1942 and continued through approximately 1978, primarily while he was employed as a railroad worker for the defendants and/or defendants' predecessors in Ohio and Pennsylvania.

12. Decedent suffered from mesothelioma, which was caused in whole or in part by the negligence, carelessness and/or recklessness of the defendants and/or defendants' predecessors, generally and more specifically as follows:

a) In failing to exercise reasonable care to adequately warn Decedent of the risks, dangers and harm to which he was exposed in working with inhaling asbestos.

b) In failing to provide the Decedent with reasonably safe and sufficient personal safety apparel and equipment including but not limited to respirators as was necessary to protect him from being injured, poisoned, disabled, killed or otherwise harmed, by working with, using, handling and/or coming in contact with and being exposed to asbestos.

c) In failing to provide Decedent with a reasonably safe place in which to work.

d) In failing to minimize or eliminate Decedent's exposure to asbestos by providing ventilating and exhaust fans, dampening or wetting procedures and other recommended and available procedures.

e) In failing to conduct any tests to determine the presence and/or amount of asbestos in and around the Decedent's workplace.

f) In failing to transfer Decedent from workplaces where he had been exposed to asbestos to other employment with no such or lessor exposure.

g) In failing to conduct physical examinations of Decedent of such quality as to detect any effects of asbestos so that its employees, such as Decedent, could be advised as to the

dangers of such exposure so Decedent could have taken appropriate safety measures.

h)  In failing to issue and enforce appropriate safety rules limiting or eliminating exposure to asbestos.

i)  In failing to obey appropriate and applicable federal and state regulations and industrial hygiene recommendations intended to protect Decedent from exposure to asbestos.

13.  As a direct and proximate result of the foregoing, the defendants are jointly and severally liable for the injuries and death suffered by the Plaintiff's decedent.

14.  As a direct and proximate result, in whole or part of one or more of the foregoing negligent or unlawful acts on the part of the defendants and/or defendants' predecessors, Decedent suffered exposure to including asbestos which caused him to sustain sever injury to his body and respiratory system resulting in his progressive disability and death.

15.  As a result Decedent suffered pain, mental anguish, disability and death. His enjoyment of life and earning capacity were greatly reduced and his expected life span was greatly shortened.  Decedent was forced to incur expenses by way of doctor, hospital and drug bills, in an effort to treat his condition.


## CLAIM II – AGAINST ALL DEFENDANTS

16.  Plaintiff brings this action as Executor of the Estate of Harold Boyd, Deceased, having already been so appointed on August 28, 2001 in Franklin County, Ohio.  The decedent is survived by his heirs at law, all of whom are beneficiaries of the Wrongful Death Action.

17.  Decedent's beneficiaries under the Wrongful Death Act have suffered the following damages as a direct and proximate result of defendants' conduct as more fully described herein: Loss of support from the reasonably expected earning capacity of the decedents; loss of services;

loss of society, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training and education; loss of prospective inheritance to the decedents' heirs at law at the time of death; mental anguish; and funeral and burial expenses.

18.  As a direct and proximate result of defendants' conduct as more fully described herein plaintiff and decedent incurred medical and hospital expenses prior to his death and sustained pain and suffering as a result of his injuries.

19. (a).      The defendants A-Best Products Company, Inc.; Garlock, Inc.; Goodyear Tire & Rubber Company; Insul Company, Inc.; Owens-Illinois, Inc.; RPM, Inc.; Seegott, Inc. are Ohio corporations.

19.(b). The remaining named defendants are foreign corporations either incorporated under the laws of another state or organized under the laws of a foreign country and are qualified to do business in Ohio.

19.(c). The real names and addresses of defendants John Does 1-100 manufacturers, sellers or installers of asbestos-containing products have not been determined, despite reasonable efforts of the plaintiff to do so.

20.      Defendants, except defendant Metropolitan Life and the decedent's railroad employers, have at all times relevant and pertinent hereto, been engaged in the business of mining, milling, manufacturing, fabricating, designing, formulating, producing, creating, making, constructing, assembling and/or rebuilding asbestos-containing products or components thereof; and/or selling, distributing, preparing, blending, packaging, labeling, and/or otherwise participating in placing asbestos-containing products in the stream of commerce to which decedent was exposed during his employment.

21.      During the period of time they were so employed, the decedent was exposed to and

did inhale asbestos dust and asbestos fibers released from the asbestos-containing products of defendants and/or their predecessors-in-interest, which directly and proximately caused decedent to contract mesothelioma, asbestosis and asbestos-related disease with associated complications, which resulted in his disability and death.

22.    The Decedent's diseases as set forth herein with associated complications were directly and proximately caused by the acts of the defendants acting through their agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of said defendants, and the defendants are liable therefore, jointly and severally.

## CLAIM III - STRICT LIABILITY FOR DEFECTIVE DESIGN

23.    All prior allegations are incorporated by reference as if fully rewritten herein.

24.    At all times relevant herein, including the times they left defendants' control and were put into commerce, asbestos-containing products and/or their component parts and ingredients were defective in design or formulation of the products exceeded the benefits associated therewith; and/or the products were more dangerous than an ordinary consumer, user, mechanic, laborer or installer of defendants' products would expect when used in a manner that were intended or reasonably foreseeable by the defendants.

25.    The defendants participated in placing in commerce asbestos-containing products which they knew were defective and/or unreasonably dangerous to the user or consumer, and acted in flagrant disregard for the safety of persons who might be harmed by their products.

26.    As a direct and proximate result of the acts of the defendants, the plaintiff and the decedent suffered the injuries and damages as alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiff in strict liability for the defective design of their

products at common law and pursuant to R.C. 2307.71 et seq.

### CLAIM IV - STRICT LIABILITY FOR FAILURE TO WARN

27.     All prior allegations are incorporated by reference as if fully rewritten herein.

28.     Defendants' products were defective due to inadequate warning or instruction at the time of marketing in that defendants knew or, in the exercise of reasonable care, should have known about risks associated with their products and failed to provide reasonable and/or adequate warning or instruction in light of the likelihood of harm and likely seriousness of that harm.

29.     Alternatively, the asbestos-containing products were defective due to inadequate post-marketing warning or instruction in that at relevant times after the products left the defendants' control, defendants knew or, in the exercise of reasonable care, should have known about risks associated with the products and failed to provide reasonable and/or adequate post-marketing warning or instruction in the exercise of reasonable care in light of the likelihood of harm and likely seriousness of that harm.

30.     The use of defendants' products causing the injuries and damages sustained by plaintiff was reasonably foreseeable by defendants.

31.     The defendants participated in placing in commerce asbestos-containing products which they knew were defective, and acted in flagrant disregard for the safety of persons who might be harmed by their products.

32.     As a direct and proximate result of the defective aspect(s) of the defendants' or asbestos-containing products, plaintiff sustained the injuries and damages as alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiff in strict liability for their failure to warn at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM V - NEGLIGENT FAILURE TO WARN

33.    All prior allegations are incorporated by reference as if fully rewritten herein.

34.    Defendants were negligent due to inadequate warning or instruction at the time of marketing in that defendants knew or, in the exercise of reasonable care, should have known about risks associated with their products and failed to provide reasonable and/or adequate warning or instruction in light of the likelihood of harm and likely seriousness of that harm.

35.    Alternatively, defendants were negligent due to inadequate post-marketing warning or instruction in that at relevant times after the products left the defendants' control, defendants knew or, in the exercise of reasonable care, should have known about the risks associated with the products and failed to provide adequate and/or reasonable post-marketing warning or instruction in the exercise of reasonable care in light of the likelihood of harm and likely seriousness of that harm.

36.    The use of defendants' products causing the injuries and damages sustained by plaintiff were reasonably foreseeable by defendants.

37.    The defendants participated in placing in commerce asbestos-containing products which they knew or, in the exercise of reasonable care should have known, posed risks to a user or consumer, and acted in flagrant disregard for the safety of persons who might be harmed by their products.

38.    As a direct and proximate result of the defendants' negligence, plaintiff sustained the injuries and damages as alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiff in negligence at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM VI - BREACH OF WARRANTY

39.     All prior allegations are incorporated by reference as if fully rewritten herein.

40.     At the time they left defendants' control, the asbestos-containing products were defective due to their failure to conform to representations of the defendants, including express and implied representations as to the safety, quality and fitness for purpose of the products and representations as to scientific data and research showing safety, quality and fitness for purpose of the products.

41.     Defendants' conduct were in flagrant disregard of the safety of persons who might be harmed by the product.

42.     As a direct and proximate result of the defendants' products' failure to conform to express and implied warranties made by defendants, plaintiff sustained the injuries and damages alleged herein, and the defendants are liable therefore, jointly and severally, to the plaintiff for breach of implied and express warranties at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM VII - CONSPIRACY, CONCERT OF ACTION AND COMMON ENTERPRISE

43.     All prior allegations are incorporated by reference as if fully rewritten herein.

44.     Defendants, individually, together and/or as a group, along with their insurers, and other companies beyond the reach of this court due to bankruptcy or orders of the federal courts prohibiting the bringing of any cause of action against them (hereinafter THE ASBESTOS INDUSTRY) have possessed since 1929, medical and scientific data which indicated that asbestos-containing products were hazardous to health.  Prompted by pecuniary motives, the defendants, individually, together, with their insurers and/or as a group, willfully and wantonly ignored and/or failed to act upon said medical and scientific data.  Rather, they conspired together to deceive the public in several aspects:  by controlling industry-supported research in a manner inconsistent with

the health and safety interest of asbestos users and consumers; by successfully tainting reports of medical and scientific data appearing in industry and medical literature; by suppressing the dissemination of certain medical and scientific information relating to the harmful effects of exposure to asbestos-containing products; and by prohibiting the publication of certain scientific and medical articles. Such conspiratorial activities deprived the users, mechanics, laborers and installers of defendants' asbestos products of the opportunity to determine whether or not they would expose themselves to the unreasonably dangerous asbestos products of said defendants. As a direct and proximate result of the aforesaid actions, decedent was exposed to asbestos dust and fibers and contracted asbestos disease, asbestosis, cancer and other asbestos related diseases.

45. THE ASBESTOS INDUSTRY has conspired together to deceive the public and the decedent in several aspects, including, but not limited to:

a. Controlling industry supported research in a matter inconsistent with the health and safety interests of the products' users and consumers.

b. Successfully tainting reports of medical and scientific data appearing in industry medical literature.

c. Suppressing certain medical scientific information relating to the harmful effects of exposure to asbestos-containing products.

d. Prohibiting the publication of certain scientific and medical articles.

e. THE ASBESTOS INDUSTRY, knowing such statements to be patently false, knowingly conspired to positively assert that the asbestos products were safe to work with or around.

f. THE ASBESTOS INDUSTRY, knowing that harm would occur, caused workers, such as the plaintiff and the decedent, to remain ignorant of the harmful effects of asbestos products with which they worked or around which they worked.

g.   One or more members of THE ASBESTOS INDUSTRY refused to warn their employees, the government, the public, the employers of people such as the plaintiff and decedent about the hazards of asbestos.

h.   Two or more members of THE ASBESTOS INDUSTRY agreed in writing not to disclose the results of research regarding the effects of exposure to asbestos unless the results suited their own selfish and malicious pecuniary interests.

i.   The statements made by THE ASBESTOS INDUSTRY constituted false statements of material facts.

j.   THE ASBESTOS INDUSTRY, at the time the statements were made, knew or believed the statements made were false.

k.   THE ASBESTOS INDUSTRY intended that the government, the public, the plaintiff and decedent would act in reliance of the false statements previously stated.

l.   The public, the plaintiff and decedent, acted in reliance on the truth of statements made that asbestos were safe for its intended and reasonably foreseeable uses.

m.   The Decedents' injuries, as previously stated, were directly and proximately caused by the reliance upon the false statements by THE ASBESTOS INDUSTRY.

46.   Once the knowledge and evidence of the dangers of asbestos products escaped the control of the defendants and their insurers the defendants, their insurers, and other companies beyond the reach of this court due to bankruptcy or orders of the federal courts prohibiting the bringing of any cause of action against them continued to conspire to deceive the public, the courts and the government about the magnitude of the potential harm. The defendants and their insurers

have conspired to hide or destroy evidence, lie to the courts and the public about their financial status, and have continued in their attempts to influence and manipulate the medical literature being published.

47.     Additionally, THE ASBESTOS INDUSTRY, directly and through their agents, created fraudulent defenses to prevent persons, such as the plaintiff and decedent, who were harmed by their products and mislead by the conspiratorial and fraudulent actions of the defendants and their insurers, from receiving due compensation for their injuries.   Even after the courts and the public have become aware of the conspiratorial and fraudulent activities of the defendants and their insurers the defendants and their insurers continue in their ongoing conspiracy to this very day.

48.     The conduct of THE ASBESTOS INDUSTRY were and are in a flagrant disregard for the rights and safety of persons who might be harmed by their products and to those persons, like the plaintiff and decedent, who have been harmed by their products.

49.     As a direct and proximate result of the fraudulent and conspiratorial conduct of THE ASBESTOS INDUSTRY, plaintiff sustained the injuries and damages alleged, for which the defendants are jointly and severally liable for their conspiratorial and fraudulent enterprise, at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM VIII - ALTERNATIVE LIABILITY

50.     All prior allegations are incorporated by reference as if fully rewritten herein.

51.     The Defendants, and at least two of them, committed the tortious acts complained of herein.

52.     Due to the indivisible nature of the injury suffered by the plaintiff and decedent, Plaintiff is unable to adequately identify which of the Defendants who sold or otherwise injected

into the stream of commerce the exact and specific asbestos product which caused the indivisible injuries complained of herein. That inability is not through any fault of the Plaintiff or due to any fault of the Decedent.

53.    The named Defendants and those that are beyond the reach of this action due to bankruptcy or orders of federal judges prohibiting the bringing of any cause of action in this court for the injuries complained of herein, sold or otherwise injected into the stream of commerce the asbestos products present in the decedents' environment to which the decedent was thereby exposed.

54.    All of the asbestos products sold, produced or otherwise injected into the stream of commerce were virtually identical in that they all shared a common defect, that being the inclusion of respirable asbestos within the product.

55.    For the acts of the of the defendants stated herein, the defendants each individually and alternatively liable to the Plaintiff for the injuries herein stated, for which the defendants are liable at common law and pursuant to R.C. 2307.71 et seq.

### CLAIM IX - MARKET SHARE LIABILITY

56.    All prior allegations are incorporated by reference as if fully rewritten herein.

57.    The named defendants and those set forth above that are under the protection of federal courts, sold, promoted or otherwise participated in the injecting of asbestos products into the stream of commerce which constituted a substantial share of all the asbestos containing products in the state of Ohio.

58.    Respirable asbestos fibers emitted by defendants' products are completely fungible materials incapable of being distinguished one from the other when inhaled by the decedent, as the

asbestos fibers were in fact inhaled.

59.    As a direct and proximate cause of the contributing to said substantial share of the asbestos product market of Ohio by any or all of the defendants, any and all of the defendants have caused damage to the Plaintiff as herein described, for which the defendants are liable at common law and pursuant to R.C. 2307.71 et seq..

## CLAIM X - AGAINST METROPOLITAN LIFE

60.    All prior allegations are incorporated by reference as if fully rewritten herein.

61.    THE ASBESTOS INDUSTRY, individually, together and/or as a group, have possessed, since the 1920's, medical and scientific data which indicated that asbestos-containing products were hazardous to health. Prompted by pecuniary motives, the Defendants, individually, together and/or as a group, willfully, wantonly and in total disregard for the safety of the decedent, failed to act upon said medical and scientific data. Rather, they conspired together to deceive the public and the decedent in several aspects, including, but not limited to:

    a.    By controlling industry supported research in a matter inconsistent with the health and safety interest of the asbestos-containing products users and consumers.

    b.    By successfully tainting reports of medical and scientific data appearing in industry and medical literature.

    c.    By suppressing certain medical and scientific information relating to the harmful effects of exposure to asbestos-containing products.

    d.    By prohibiting the publication of certain scientific and medical articles.

62.    Such conspiratorial activities deprived the users, mechanics, laborers and installers of Defendants' asbestos-containing products of the opportunity to determine whether or not they

would expose themselves to the unreasonably and ultrahazardous dangers of the asbestos-containing products of said Defendants.

63.    As a direct and proximate result of the willful, wanton, outrageous conduct and utter disregard for the safety of the decedent, the decedent was exposed to asbestos-containing products and contracted asbestosis, mesothelioma and other asbestos related disease.

64.    As a direct and proximate result of the willful, wanton, and reckless misconduct and utter disregard for the safety of decedent, who has been injured and damaged as previously described, for which the defendants are liable at common law and pursuant to R.C. 2307.71 et seq.

## CLAIM XI - AGAINST METROPOLITAN LIFE

65.    All prior allegations are incorporated by reference as if fully rewritten herein.

66.    In or about the year 1930, and at various times prior and subsequent thereto, up to and including the present time, defendant Metropolitan Life Insurance Company undertook and assumed a duty to provide the asbestos industry, the scientific community and company users of asbestos with information, inspections, instructions, supervision, recommendations, assistance, notices, reports, methods, findings, cautions, warnings, advice, designs, equipment, safeguards, guidance and services to properly, adequately and reasonably provide safe working conditions, all allegedly to preserve and protect the life, health and safety of employees exposed to asbestos, including the decedent and his co-workers, and particularly to protect them from the dangerous and defective properties of asbestos, asbestos products and compounds and/or other dangerous substances at or about the workplace.

67.    Plaintiff avers that various employers and their employees, including the decedent's and scientists and others similarly situated, were dependent upon the undertakings of the

Metropolitan aforesaid to preserve and protect the life, health and safety of employees at all times from the commencement of the said relationship between the asbestos industry and Metropolitan.

68.    Metropolitan, by its active and passive negligence, failed to exercise the standard of care and skill it were obliged to exercise by reason of its aforesaid undertakings and assumption of duty, thereby causing, creating or permitting dangerous conditions and exposure to dangerous and defective substances; and thereby failing to properly safeguard decedent and all others similarly situated.

69.    As a result of the aforesaid negligence of the defendants Metropolitan, the decedent was injured, for which injuries the defendants are liable at common law and pursuant to pursuant to R.C. 2307.71 et seq.

## CLAIM XII - AGAINST METROPOLITAN LIFE

70.    All prior allegations are incorporated by reference as if fully rewritten herein.

71.    For a number of years, Metropolitan provided insurance coverage for various manufacturers of asbestos-containing products.

72.    For a number of years, Dr. A.J. Lanza served as assistant medical director of Metropolitan.

73.    At all times relevant, the activities of Dr. Lanza hereinafter described were undertaken as a servant, agent or employee of Metropolitan.

a.    Beginning in approximately 1934, Metropolitan Life Insurance Company and certain asbestos producers and manufacturers including Johns-Manville Corporation and Raybestos Manhattan, through their agents, Vandiver Brown, attorney J.C. Hobart, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, as agent of Metropolitan Life Insurance Company, that Lanza publish a study on

asbestos in which Lanza would affirmatively misrepresent material facts about asbestos exposure and concerning the seriousness of the disease processes, asbestosis and related diseases. This were accomplished through intentional deletion of Lanza's feeling of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as causing diseases less serious than they really were known to be. As a result, Lanza's study were published in the medical literature in this misleading fashion in 1935.    This fraudulent misrepresentation and fraudulent nondisclosure were motivated in part by a desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in disputes involving Metropolitan as insurer.

b.  In 1936, American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Russell Manufacturing, Union Asbestos and Rubber Company, and United Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and could also control in what form such publications were to occur. This agreement gave these companies power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study.    On numerous occasions thereafter, these companies together with Metropolitan, exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

c.  On November 11, 1948, representatives of the following companies met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Show Foundry, Gatke Corporation, Keasbey & Mattison Company, Raybestos-Manhattan, Inc., Thermoid Company, Union Asbestos and Rubber Company, United States

Gypsum Company and Metropolitan. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

d.     At this November 11, 1948 meeting, these companies and Metropolitan decided to exert their influence to materially alter and misrepresent material facts about the substance of research previously started by Dr. Leroy Gardner at the Saranac Laboratories. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then existing standards of dust exposure for asbestos and asbestos products.

e.     At this meeting, these companies and Metropolitan and subsequently their agent, Dr. Vorwald, intentionally and affirmatively determined that Dr. Gardner's work should be edited to delete material facts about the cancer causing propensity of asbestos and the health effects of asbestos on humans and to delete the critique of the dust standards. This were published, as altered, in the scientific literature. These companies and Metropolitan thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, scientists, and persons exposed to asbestos such as the plaintiff.

f.     As a direct result of the actions as described above, Dr. Gardner's edited work were published in the <u>Journal of Industrial Hygiene</u>, <u>AMA Archives of Industrial Hygiene and Occupational Health</u> in 1951 in a form that stressed those portions of Dr. Gardner's work that Metropolitan wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of risks. Metropolitan and the companies it joined with affirmatively and deliberately disseminated this misleading publication.

g.     Such action constituted a material affirmative misrepresentation of material facts involving Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos were less of a

health problem than Dr. Gardner's unedited work indicated.

h.    In 1955, Johns-Manville, for itself and on behalf of Metropolitan, through their agent Kenneth Smith, caused to be published in the <u>AMA Archives of Industrial Health</u>, an article entitled "Pulmonary Disability In Asbestos Workers". This published study materially altered the results of an earlier study in 1949 concerning the same set of workers. This alteration of Dr. Smith's study constituted a fraudulent and material representation about the extent of the risk associated with asbestos inhalation.

i.    In 1955, the National Cancer Institute held a meeting at which Johns-Manville, individually and as an agent for Metropolitan, and A. Vorwald, as their agent, affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, Metropolitan were in secret possession of several studies which demonstrated that positive evidence did exist.

j.    Metropolitan approved and ratified and furthered the previous acts of Johns-Manville, Raybestos Manhattan, and A.J. Lanza.

74.    The acts of Metropolitan as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation which proximately caused injury to the plaintiff in the following manner:

a.    Metropolitan intended the publication of false and misleading reports and/or the nondisclosure of documented reports of health hazards of asbestos, in order to:

(i) .    Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products.

(ii)    Assist in the continued pecuniary gain through the control and reduction of claims.

(iii)    Influence proposed legislation to regulate asbestos exposure.

(iv)    Provide a defense in law suits brought for injury resulting from asbestos disease.

b.    Metropolitan intended reliance upon the published reports regarding the safety of asbestos and asbestos-related products.

c.    Plaintiff suffered injury as a direct and proximate result of the acts alleged herein.

75.    Metropolitan has, as previously stated, altered, influenced, and created significant portions of medical literature which are false and misleading statements concerning the dangers of asbestos exposure and disease. In so doing, Metropolitan, and its aforesaid agents, provided a body of medical literature which, when relied upon by persons investigating such literature, would have lead to a false impression of the dangers of asbestos exposure. Additionally, the publication of such literature acted to inhibit the development of the literature and effectively delayed the dissemination of accurate knowledge of the dangers. Metropolitan owed a duty to the decedent, and the public as a whole, when contributing to the medical literature to do so in good faith and with the reasonable care expected of any professional contributing to such literature; Metropolitan's failure to do so are willful and wanton negligence and a separate intentional tort creating a duty to compensate the Plaintiff for injuries sustained as a proximate contributing result of the actions of Metropolitan Life Insurance Company.

76.    As a direct and proximate result of the fraudulent concealment and/or fraudulent representation by Metropolitan and its agents, the plaintiff's decedent suffered the diseases, injuries and damages set forth in the foregoing paragraphs, for which injuries the defendants are liable at common law and pursuant to pursuant to R.C. 2307.71 et seq.

*Harold Boyd* I 33283

_T System

**Service of Process Transmittal Form**
Philadelphia, Pennsylvania

**05/16/2002**

Via Federal Express (2nd Day)

**TO:** JAMES C KENNEDY DEPUTY GENERAL COUNSEL & SECRE
AMERICAN PREMIER UNDERWRITERS, INC.
ONE EAST FOURTH STREET
CINCINNATI, OH 45202-0000

RECEIVED
MAY 2 1 2002

**RE:** **PROCESS SERVED IN PENNSYLVANIA**

**FOR**     THE PENN CENTRAL CORPORATION Domestic State: Pa
True Name : AMERICAN PREMIER UNDERWRITERS, INC.

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**1. TITLE OF ACTION:**     James Ray etc vs A-Best Products Company Inc et al including Penn Central
Corporation

**2. DOCUMENT(S) SERVED:**     Summons, Complaint, Jury Demand, Complaint Brochure.

**3. COURT:**     Common Pleas Court, Cuyahoga County, Ohio
Case Number 02468660

**4. NATURE OF ACTION:**     Asbestos Litigation

**5. ON WHOM PROCESS WAS SERVED:**     CT Corporation System, Philadelphia, Pennsylvania

**6. DATE AND HOUR OF SERVICE:**     By Certified mail on 05/16/2002 with Postmarked Date 05/09/2002

**7. APPEARANCE OR ANSWER DUE:**     Within 28 days

**8. ATTORNEY(S):**     440-779-6636
John J. Duffy, Esquire
John J. Duffy & Associates
Brendan Place
23823 Lorain Road, Suite 270
North Olmsted, OH 44070

**9. REMARKS:**     Name discrepancy noted.

SIGNED     CT Corporation System

PER     Rosemary Welsh
ADDRESS     1515 Market Street
Suite 1210
Philadelphia, PA 19102
SOP WS 0004491849

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit
quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages,
the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the
documents and for taking the appropriate action.

## COUNT XIII - AGAINST COMBUSTION ENGINEERING, INC., ABB, INC. AND ABB, LTD.

77.    Plaintiff incorporates the aforementioned paragraphs by reference hereto as fully set forth herein.

### Combustion Engineering, Inc.

78.    Combustion Engineering, Inc. (hereinafter "Combustion Engineering") is a company incorporated in the state of Delaware with its principal place of business in the state of Connecticut.

79.    At all times relevant to the instant case Combustion Engineering has been doing business in this state.

80.    In June, 1963 Combustion Engineering purchased an asbestos manufacturing company called Refractories & Insulation (hereinafter "R&I"), which it owned until 1972.

81.    Combustion Engineering has denied liability for any asbestos-related claim for exposure to products outside the years 1963 to 1972.

82.    Combustion Engineering's denial notwithstanding, in 1985 Combustion Engineering admitted distributing Owens Corning K-12 Calcium Silicate Block; Owens Corning K-12 Calcium Silicate Pipe Covering; Owens Corning K-20 Insulating Block; Owens Corning Kaylo 10 Calcium Silicate Block; Owens Corning Kaylo 20 Block; Owens Corning Kaylo Calcium Silicate Pipe Covering; Johns Manville Thermobestos Calcium Silicate Block; Johns Manville Thermobestos Calcium Pipe Covering; Johns Manville Asbestos Cloth; and Johns Manville Asbestos Gasketing. (Steubenville City School District Board of Education vs. Armstrong World Industries; Common Pleas Court, Jefferson County, October 2, 1985, Exhibit A.) These products have ceased to appear in discovery responses by Combustion Engineering in

the 1990's.

83.    Combustion Engineering had Unibestos pipe insulation put in boxes with the C-E brand "Ribestos". (Foster Wheeler Contract Manual, Exhibit to the Deposition of C-E designated witness William Tuppeny, October 19, 2000  Anderson v. Combustion Engineering.(Milwaukee Wisconsin).)

84.    Combustion Engineering began making a pipe insulation in 1934. (Combustion Magazine 1934 and Feb. 3, 1999 Deposition of George Woods Greco v. A-Best (Cuyahoga County Ohio) (hereinafter "Woods II") at pp. 57-58.)

85.    Combustion Engineering admitted to making and/or selling Detroc Asbestos Board, Detrick Easy Seal Cement, Detrick Bonding Cement, Detrick Thinsuliner cement, Detrick T-60 Insulating Finish, Detrick No. 7 Asbestos cement, ("straight asbestos fiber cement comprised of asbestos"), Detrick Asbestos Ropes, ("consisting of two types, blue fiber rope and white fiber rope, comprised of long fiber amosite, finished in 100 foot coils ½ to 2 inches in diameter"), No. 18 insulating block, Pourinsul, and Packinsul. (Answers to Interrogatories February 14, 1968  Claude Tomplait v. Combustion Engineering, Inc. (No. 5402 USDC TX).) The same interrogatories admit to distribution of Calcium silicate insulation.

86.    Combustion Engineering has documents which demonstrate the following asbestos products:  Air Check #2, #3 Asbestos Cement, 0714 Insulating Cement, Lee Wilson Sidewall Block, LW Fractocast 18, LW Fractocast 20 LI, Mullitex 132, and Pourable Insulation. (Form for invoices, May 17, 1972 F. C. Steimke to R.T. Hegeman, and Walsh product list, Document titled Mortars, Walsh Product List, Recipe Card, May 25, 1976 A. Momme to G. Woods, Document listing block insulations No. 600-617, Page Two of Document to J. Johnson dated 2/26/71, Attachment I, all produced by the Defendant for Woods II.)

87.    Combustion Engineering also has documents demonstrating the Defendant distributed the following Asbestos Mill Board, Mineral Wool Pipe Covering, Calcium Silicate Block and Pipe insulation from Ruberoid and Nicolet and Unibestos asbestos insulation. (Exhibit 4 to the Deposition of Frank Christenson, July 14, 1988.)

88.    George Woods, speaking as a Combustion Engineering spokesman testified that Ramtite (a Combustion Engineering acquisition by merger) made a Lite Wate 22 and Lite Wate 50 castable from 1964 to 1968. (Deposition of George Woods Robinson v. A-Best (Butler County, Ohio) June 24, 1998 Pp. 21-22, 121- 129, 135, 143-146, 156 (hereinafter "Woods I").)

89.    Upon information and belief, Combustion Engineering is liable for the following asbestos-containing products: Arch Cement, Asbestos Furnace Cement, LW Plastic 87-32, Koil Kote, Hi Temperature Flexible Compound, Heat Check #170, #14 Block Insulation, #18 Block Insulation, Easy Seal Insulating Cement, Thinsuliner Cement, #1800 Cement, Heat Check Insulating Cement, Pourinsul 14, Pourinsul 18, Pourinsul 30, Mix B, Mix C, #3 Asbestos Cement, #7 Asbestos Cement, Special Super Stic Tite.  Combustion Engineering has not admitted to these products in its discovery responses over the years.  Moreover, the product Special Super Stic Tite was made with asbestos beginning as late as December 31, 1974, two years **after** Combustion Engineering claims its liability for asbestos-containing products ended.

90.    Combustion Engineering admits responsibility for Refractories & Insulation, Detrick Insulation Division and Walsh Refractories; however, Combustion Engineering will has routinely refused to provide information concerning these asbestos companies in its discovery practice for anytime beyond the period between 1963 until 1972.

91.    International Combustion Engineering, Inc. incorporated Ladd Water Tube Boilers in Delaware October 10, 1925. Superheater Company acquired International Combustion

Engineering in 1933. Superheater Company (hereinafter "Superheater") changed its name to Combustion Engineering, Inc. December 31, 1948. Superheater and Combustion Engineering continuing to make the Ladd boilers after 1933. (Report Moody's Industrials (1928) and Bethlehem Steel Co. V. International Combustion Engineering Corporation. v. Combustion Engineering Corporation. (CA 2 1933) 66 F.2d 409.)

92.     In 1933, Superheater acquired Heine Boiler Company. Superheater and Combustion Engineering continued to make Heine boilers after 1933. (Bethlehem Steel Co. V. International Combustion Engineering Corporation. v. Combustion Engineering Corporation. (CA 2 1933) 66 F.2d 409.)

93.     In 1933, Superheater acquired Hedges-Walsh-Weidner Company. Superheater/ Combustion Engineering continued to make Hedges-Walsh-Weidner Company boilers after 1933.

94.     Superheater acquired the Air Preheater Corporation which made Ljungstrom Air Preheaters in 1933. Superheater/Combustion Engineering continued to make the Ljungstrom Air Preheaters after 1933. Air Preheater had a virtual monopoly on the market.

95.     In 1930, Superheater/Combustion Engineering together with Babcock & Wilcox acquired Walter E. Lummus Co. Of Boston. Combustion Engineering and Babcock & Wilcox operated Walter E. Lummus Co. of Boston as The Lummus Co. until July 24, 1957 when Combustion Engineering acquired all of Babcock & Wilcox's interests in The Lummus Co. The Lummus Co. purchased asbestos products from CE Refractories/R&I.

96.     In 1965, Combustion Engineering acquired National Tank Company, operating the entity as a division. National Tank Company/C-E Natco sold asbestos gaskets, asbestos insulation and utilized asbestos products from Combustion Engineering.

97.    Combustion Engineering acquired the Wickes Boiler division in 1966. Combustion Engineering continued making Wickes boilers after 1966.

98.    In 1967, Combustion Engineering acquired for stock and merged into Combustion Engineering, The S. Obermayer Company and its Ramtite division. The S. Obermayer sold asbestos products to the foundry industry and Ramitite made asbestos containing products prior to the 1967 acquisition.

99.    On April 30, 1979, Basic, Inc. was acquired by and merged into Combustion Engineering. In sworn answers to interrogatories filed in West Virginia filed subsequent to the merger, Combustion Engineering has never acknowledged its liability for the Kilnoise asbestos spray product.

100.    C-E Refractories Division made an effort to sell its products, including the asbestos containing products, to other C-E subsidiaries and divisions including Air Preheater Corporation, C-E Raymond, C-E Cast, and C-E Glass.

101.    Upon information and belief, Combustion Engineering has denied liability for each of the above-referenced entities, with the single exception of Basic, Inc., and in its denial has also refused to admit any liability beyond the years 1963 to 1972, the years in which it owned Refractories & Insulation.

### Defendants ABB, Inc. and ABB, Ltd.

102.    Asea Brown Boveri, Ltd. (hereinafter "ABB, Ltd.") has at all times relevant done business in the United States and in this state directly and through Combustion Engineering, Inc.

103.    ABB, Ltd., in its own right and as a successor in interest to and liable for Combustion Engineering, is a Swiss Corporation with its principal place of business in a state other than Pennsylvania. This Defendant does not maintain a resident agent in the State of

Pennsylvania and may be served c/o ABB, Ltd., P.O. Box 8131, Affolternstrasse 44 CH-8050,

Zurich, Switzerland, 011-41-1-317-7111. ABB, Ltd. may also be served c/o Richard M. Burt,

Vice President and General Counsel, Asea Brown Boveri Ltd., 501 Merritt 7, Norwalk,

Connecticut 06856.

104.    ABB, Inc. does business in the State of Pennsylvania.

105.    In 1987, ABB, Ltd. was created from the merger of ASEA of Sweden, founded in

1883, and BBC Brown Boveri Ltd. of Switzerland, founded in 1891.

106.    In 1988, ABB, Ltd. merged with Combustion Engineering. Subsequent to the

merger, ABB, Ltd. negligently and intentionally perpetuated the misconduct, fraud, and

violations of statutes and common law inflicted on third party claimants in the State of

Pennsylvania as alleged above.

107.    On June 30, 1999, ABB, Ltd. and Alstom created a joint venture that included

what was formerly known as Combustion Engineering.

108.    On March 31, 2000, ABB, Ltd. sold its interest in the ABB-Alstom joint venture

to Alstom.

109.    In April 2001, ABB, Ltd. filed financial information with the Securities and

Exchange Commission of the United States Government in an effort to gain approval for listing

the ABB, Ltd. stock in the New York Stock Exchange. In this document filed April 10, 2001

ABB, Ltd. stated "We retain ownership of Combustion Engineering a now inactive subsidiary . .

. and its asbestos liabilities." (Exchange Offer Prospectus, Offer to Exchange All of Our

Outstanding Restricted American Depositary Shares for New American Depositary Shares, Filed

Pursuant to Rule 424(b)(3) Registration No. 333-58242, Page 12.

110.    Upon information and belief, during the period from ABB, Ltd.'s acquisition of

Combustion Engineering in 1988 and the present date, ABB, Ltd. has approved and ratified the false and misleading responses to sworn discovery responses by Combustion Engineering.

111.    Defendants Combustion Engineering, ABB, Ltd. and ABB, Inc. are all "sellers".

112.    Defendants ABB, Ltd. and ABB, Inc. are successors-in-interest to and/or dominated and controlled and/or legally responsible for defendant Combustion Engineering.

113.    Defendants ABB, Ltd. and ABB, Inc. are co-conspirators with Combustion Engineering in the wrongful conduct described herein.

114.    Combustion Engineering, its agents and co-conspirators were responsible for creating, conducting and orchestrating all of the acts and omissions previously alleged, including but not limited to being responsible for fraudulent discovery practices.

115.    Defendants Combustion Engineering, ABB, Ltd. and ABB, Inc. conspired in, aided and abetted in, and otherwise assisted in the continuing fraud and misrepresentations by the Combustion Engineering and its insurer Travelers Insurance.  Said defendants engaged in unlawful conduct in their orchestration of fraud and abuse of the attorney-client privilege and work product protections.

116.    Travelers Insurance was CE's insurance carrier and, pursuant to the insurance contract, CE and Travelers agreed to cooperate in a joint defense of asbestos cases throughout the country.

117.    Travelers and CE shared an identical legal interest in defending these cases.

118.    Travelers was an integral and necessary part of the common defense and a necessary part of the rendition of legal services provided to defend CE.

119.    Combustion Engineering relied on Travelers as its representative to help control the asbestos litigation and coordinate the defense of these cases.

120.    Combustion Engineering and its agents determined that in defending the pending and future asbestos cases it would "require a uniform method of management and communication between the corporation and its outside counsel. The local counsel handbook was the means of implementing CE's desired method of case management and communication with its attorneys." This furthered the illegal conspiracy previously described.

121.    The decedent's asbestos disease, injuries and death were caused in part by asbestos products for which these additional defendants are legally responsible.

## CLAIM XIV - SURVIVAL CLAIM

122.    All prior allegations are incorporated by reference as if fully rewritten herein.

123.    Plaintiff brings the claims for the injuries and damages sustained by decedent prior to his death, for the benefit of the Estate of Decedent.

124.    As a direct and proximate result of defendants' negligence, breach of warranty, failure to warn, defective design of their products and conspiratorial activities as alleged herein, decedent contracted mesothelioma, asbestosis and asbestos-related disease and suffered great pain of body and mind and incurred expenses for medical attention and hospitalization, for which the defendants are liable.

## CLAIM XV - WRONGFUL DEATH

125.    All prior allegations are incorporated by reference as if fully rewritten herein.

126.    As previously alleged, plaintiff brings a claim for all damages caused by defendant's conduct recoverable by decedent's beneficiaries under the Wrongful Death Act.

## CLAIM XVI - LOSS OF CONSORTIUM

127.    All prior allegations are incorporated by reference as if fully rewritten herein.

128.    The spouse of the decedent has suffered in her own right the injury previously alleged as a direct and proximate cause of defendants' acts, for which the defendants are liable.


## CLAIM XVII - PUNITIVE DAMAGES

129.    All prior allegations are incorporated by reference as if fully rewritten herein.

130.    The defendants' actions as stated herein constitute a flagrant disregard for the rights and safety of the public and the decedent for which they are liable for punitive damages.

**WHEREFORE,** Plaintiff demands judgment against defendants, jointly and severally, in an amount in excess of $25,000.00 that will fully and fairly compensate plaintiff for the injuries and will serve the ends of justice to punish and deter defendants for their acts, together with costs, attorney fees and any other relief to which plaintiff may be entitled.

**JURY TRIAL DEMANDED AS TO ALL COUNTS.**

JOHN J. DUFFY & ASSOCIATES


By: _by Phone Consent_

John J. Duffy, Esquire  0032839
Brendan Place
23823 Lorain Road, Suite 270
North Olmsted, OH  44070
(440) 779-6636


GOLDBERG, PERSKY, JENNINGS
& WHITE, P.C.


By: _Mark Meyer  Fr mcm_

Mark C. Meyer, Esquire
(Motion for admission pro hac vice)
1030 Fifth Avenue
Pittsburgh, PA  15219
(412) 471-3980

ATTORNEYS FOR THE PLAINTIFF

## PLAINTIFF'S COMPLAINT BROCHURE

### BIOGRAPHICAL INFORMATION:

Plaintiff's name: James Ray
Plaintiff's address: 626 Streamwater Drive, Blacklick, Ohio  43004

Decedent's name:  Harold Boyd
Social Security #: 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
Date of Birth:  March 1, 1915
Date of Diagnosis: January 10, 2001
Date of Death:  March 3, 2001
Disease process:  Mesothelioma

Work History:      Babcock & Wilcox, Barberton, Ohio  May 1941 – May 1942.
                   Erie & Lackawanna Railroad  May 1942 – February 1978.
                   (Marion, Ohio to Meadville, Pennsylvania).

### LIST OF DEFENDANT PRODUCTS THAT WILL BE IDENTIFIED

#### RESERVATION OF RIGHTS

The following information on defendant's products to be identified has been compiled as a result of plaintiff's ongoing investigation and is necessarily incomplete.  The information on defendant's products is derived from a number of sources including client communications, co-worker interviews, depositions, affidavits, interrogatories, defendant document productions, non-party discovery and multiple other sources.  Plaintiff's investigation is ongoing and undoubtedly will uncover additional asbestos containing materials that defendants sold, supplied, manufactured or used.  Plaintiffs reserve the right to supplement, amend, and revise their disclosure of defendant's products as additional information becomes available.

| DEFENDANT | ASBESTOS-CONTAINING PRODUCT |
| --- | --- |
| **A-BEST PRODUCTS COMPANY, INC.** in its own right and as successor-in-interest to Asbestos Products Co. | Asbestos protective clothing and cloth. |
| **ABB** | See Combustion Engineering. |
| **ALLIED GLOVE CORPORATION** | Asbestos handwear. |
| **ALLIED SIGNAL, INC.** in its own right and as successor-in-interest to Allied Corp., successor-in-interest to Bendix Corp. | Asbestos brake shoes and brake linings. |

| | |
|---|---|
| **AMERICAN OPTICAL CORPORATION** | Asbestos handwear. |
| **AMERICAN STANDARD, INC.,** and its division, in its own right and as successor to Westinghouse airbrake and /or WABCO | Asbestos brake shoes and asbestos brake linings. |
| **ANCHOR PACKING COMPANY** | Gaskets and rope packing. |
| **A.O. SMITH CORPORATION** in its own right and as successor-in-interest to The Clark Controller Co. and A.O. Smith Corp. | Asbestos brakes and asbestos electrical control equipment. |
| **ARGO PACKING COMPANY** | Asbestos packing and asbestos gaskets. |
| **A.W. CHESTERTON** | Gaskets. |
| **THE B.F. GOODRICH CO., INC.** | Asbestos gaskets, asbestos floor tile and asbestos-containing hoses. |
| **BLH, INCORPORATED** | Locomotives, steam vessels and steam generation equipment and asbestos gaskets, packing, pipecovering, cement, brakes and electrical controls appurtenant thereto. |
| **BONDEX INTERNATIONAL, INC.** | Asbestos joint compound and other plaster patching products. |
| **BOMBARDIER, INC.** | Locomotives, steam vessels and steam generation equipment and asbestos gaskets, packing, pipecovering, cement, brakes and electrical controls appurtenant thereto. |
| **BORG-WARNER AUTOMOTIVE, INC.** | Asbestos brake shoes and brake linings. |
| **BUDD COMPANY** | Railroad cars. |
| **CERTAINTEED CORPORATION** | Joint compound, roof coating, shingles. |
| **CHEVRON U.S.A.** | Asbestos roofing materials. |
| **COMBUSTION ENGINEERING** | Asbestos thermal insulation and other asbestos-containing material appurtenant to |

|  | boilers and other vessels. Also asbestos cement, rope and block sold and distributed under the names MH Dietrich and Ramite and/or R.I. |
|---|---|
| **CONGOLEUM CORP.** | Floor tile. |
| **CONSOLIDATED RAIL CORP.** | Railroad employer. Successor to the Erie and Lackawanna Railroad. |
| **CRANE CO.** | Valves with asbestos packing, asbestos-containing gaskets. |
| **CSX CORPORATION** | Railroad employer. Successor to the Erie and Lackawanna Railroad. |
| **DEVCON CORPORATION** | Asbestos packing materials. |
| **DURABLA MFG. CO.,** in its own right and as successor to Durabla Canada, Ltd. | Asbestos gaskets. |
| **DURAMETALLIC CORP.** | Asbestos gaskets. |
| **DUROX EQUIPMENT CORP.** | Locomotive gaskets and equipment. |
| **EATON CORP.** | Brakes and electrical equipment. |
| **ELOF HANNSON, INC.** | Hansonite board |
| **FAIRBANKS MORSE** | Locomotive engines, locomotive parts. |
| **FLINTKOTE COMPANY** | Asbestos floor tile, fiber, spray insulation and undercoating. |
| **FOSTER WHEELER CORPORATION** | Asbestos-containing insulation and other asbestos-containing material appurtenant to boilers and other vessels installed in a steel mill environment. |
| **THE GAGE COMPANY** | Asbestos thermal insulation, block, pipe coverings, cement, asbestos protective clothing, asbestos cloth and blankets, asbestos gaskets and packing, asbestos brakes, spray asbestos insulation and asbestos paper. |

**GARLOCK** — Gaskets and rope packing. Blankets.

**GENERAL MOTORS, INC.** — Locomotives and asbestos-containing material appurtenant thereto. Including brakes, pipecovering, electrical controls, block insulation, insulating cement, tape, wire, packing, gaskets, coatings, mastics, panel boards and heat shields. Delco brake linings.

**GEORGE V. HAMILTON, INC.** — Asbestos block, pipe coverings, cement, cloth and paper.

**THE GOODYEAR TIRE & RUBBER COMPANY** — Asbestos gaskets and brakes.

**GORMAN-LAVELLE PIPING** — Pumps, valves, gaskets, piping.

**GREENE TWEED & COMPANY** — Palmetto rope gaskets.

**H.B. FULLER** — Benjamin Foster mastics and coatings.

**INGERSOLL-RAND** — Asbestos gaskets, packing, pumps, compressors, valves.

**JOHN CRANE, INC.** — Asbestos gaskets and packing.

**KENTILE FLOORS, INC.** — Floor tile.

**MAGNETEK, INC., and MAGNETEK CONTROLS, INC.** — Asbestos brake lining and brake shoes.

**MARTIN-MARIETTA** — Dum-Dum caulking.

**METROPOLITAN LIFE INSURANCE COMPANY a/k/a METROPOLITAN INSURANCE COMPANY** — Met Life is liable as a conspirator; and aider and abettor.

**MOBIL OIL CORPORATION** — Dum-Dum caulking.

**NEW YORK AIRBRAKE CORP.** — Brakes and railroad car parts.

**NORFOLK SOUTHERN CORP.** — Successor to Erie Lackawanna Railroad.

**OSRAM SYLVANIA, INC.** in its own right and as successor to GTE PRODUCTS CORPORATION THE CLARK CONTROLLER COMPANY and A.O. SMITH CORPORATION

Asbestos brakes and electrical control equipment.

**OWENS-ILLINOIS, INC.**

Asbestos pipe coverings and block.

**PATRIOT SENSORS & CONTROLS CORPORATION**

Asbestos controls, brakes, valves, gaskets, rope packing.

**PENN CENTRAL**

Successor to Erie Lackawanna Railroad.

**PNEUMO-ABEX, CORPORATION,** successor-in-interest to Abex, Inc. and Pneumo-Abex Corporation in its own right

Asbestos brake shoes and linings.

**PULLMAN STANDARD**

Railroad cars and locomotive parts, including brakes, undercoating, gaskets, and parts.

**RAILROAD FRICTION PRODUCTS**

Railroad car and locomotive brakes and parts.

**RECORD INDUSTRIAL CO.**

Asbestos handwear.

**RILEY STOKER CORPORATION**

Boiler, asbestos thermal insulation and other asbestos-containing material appurtenant to boilers and other vessels.

**ROBERTSON, formerly H.H. ROBERTSON COMPANY**

Galbestos, asbestos corrugated and flat sheet material.

**ROCKWELL**

Brakes.

**RPM INC.,** in its own right and as successor to republic Powdered Metals, Inc., Bondex International, Inc. and Proko Industries.

Asbestos joint compound, and other plaster patching products, sealing materials and water proof insulation.

**SAFETY FIRST INDUSTRIES, INC.,** also known as Safety first Supply of Canada, Ltd., successor-in-interest to Safety First Supply.

Asbestos protective clothing.

| | |
|---|---|
| **THE SAGER CORPORATION** | Asbestos handwear. |
| **SEALITE, INC.** | Oakum asbestos rope packing. |
| **SEPCO CORPORATION** | Asbestos gaskets and rope packing. |
| **SQUARE D** | Electric control panels and switches. |
| **20TH CENTURY GLOVE CORP. OR TEXAS, a/k/a GUARD LINE, INC.** | Asbestos handwear. |
| **UNION CARBIDE CORPORATION** | Asbestos fiber and bakelite. |
| **UNIROYAL, INC., a/k/a UNIROYAL GOODRICH TIRE CO., f/k/a United States Rubber Company** | Asbestos cloth, fire shields and asbestos blankets. |
| **VAPOR CORPORATION** | Steam generating equipment and appurtenant insulation, gaskets, packing and controls. |
| **VIACOM, INC., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Company** | All asbestos insulation appurtenant to turbines including block, pipe coverings, cement, blankets, gaskets and packing, insulation, asbestos-containing brakes, WESCO supplied asbestos wire. |
| **WHEELER PROTECTIVE APPAREL, INC.** | Asbestos protective apparel. |
| **ZURN INDUSTRIES, INC.** | Asbestos thermal insulation and other Asbestos-containing material appurtenant to boilers and other vessels. |

**END OF BROCHURE**

ATTACHMENT D, SHEET 1

N-000063

SPECIAL COURT REPORTER

SPECIAL COURT

REGIONAL RAIL REORGANIZATION ACT OF 1973

FILED

MAR 25 1976

JAMES F. DAVEY, Clerk

)
)
In the Matter of                )  Special Court
)  Misc. No. 75-3(A)
Regional Rail Reorganization Proceedings  )
)
)
)

ORDER OF CONVEYANCE TO TRUSTEES OF
RAILROADS IN REORGANIZATION IN THE REGION

Upon consideration that --

A.  On March 12, 1976, the United States Railway
Association ("Association"), pursuant to Section 209(c)
of the Regional Rail Reorganization Act of 1973, as
amended ("Rail Act"), certified to this Court which rail
properties of railroads in reorganization in the region
are to be transferred to Consolidated Rail Corporation
("Corporation") and which rail properties of such
railroads are to be conveyed to certain profitable
railroads as defined in the Rail Act ("Profitable
Railroads"), and advised this Court which rail properties
of such railroads are to be conveyed to States or
responsible persons in accordance with Section 208(d)(2)
of the Rail Act; and

Doc. No. 14

B.  on March 24, 1976, the Association filed with this Court a document supplementing and perfecting its March 12, 1976, certification of which rail properties of railroads in reorganization in the region are to be transferred to the Corporation and which rail properties of such railroads are to be conveyed to Profitable Railroads, States or responsible persons; and

C.  on March 22, 1976, the Corporation and the Association, pursuant to Sections 303(a)(1) and 306(a), respectively, of the Rail Act, deposited with this Court all of the stock and other securities of the Corporation and all of the Certificates of Value of the Association designated in the Final System Plan that are to be exchanged for the rail properties being transferred to the Corporation; and

D.  on March 22, 1976, each Profitable Railroad, State or responsible person, pursuant to Section 303(a)(2) of the Rail Act, deposited with this Court the compensation designated in the Final System Plan to be paid for the purchase of the rail properties being conveyed to such Profitable Railroad, State or responsible person; and

**SPECIAL COURT REPORTER**     - 3 -

2. the unusually large and complex conveyancing that will occur pursuant to this Order can be expected to result in a need for corrections, amendments or supplements to the Conveyance Documents (as hereinafter defined) and to this Order in order to carry out the intent of the Final System Plan, such Conveyance Documents and this Order:

NOW THEREFORE, pursuant to Section 303(b)(1) of the Rail Act, it is hereby ordered:

Section 1. <u>Definitions</u>

As used in this Order:

A. "Certification" shall mean the Certification (including all Appendices and documents submitted therewith and made a part thereof) filed with this Court by the Association on March 12, 1976, and on file in the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

B. "Certification Supplement" shall mean the Certification Supplement (including all Appendices and documents submitted therewith and made a part thereof) filed with this Court on March 24, 1976, and on file in

SPECIAL COURT REPORTER

- 4 -

M- 000065

the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

C. "Conveyance Document Addendum" shall mean the collection of documents denominated "Conveyance Document Addendum," which was submitted to this Court by the Association with and as a part of the Certification and Certification Supplement and is on file in the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

D. "Conveyance Documents" shall mean the documents listed in the Conveyance Document Schedules (as hereinafter defined), except that the Conveyance Documents shall not include any document or part thereof filed with the Certification that has been superseded by any such document filed with the Certification Supplement. All maps referred to in the Conveyance Documents are contained in the Map Addendum (as hereinafter defined). All computer printouts of rolling stock and equipment inventory referred to in the Conveyance Documents are contained in the Rolling Stock and Equipment Addendum (as hereinafter defined).

SPECIAL COURT REPORTER

M-000067

- 5 -

E. "Conveyance Document Schedules" shall mean
the Schedules contained in Appendices I-A, II-A and IV
of the Certification and Certification Supplement, which
Schedules identify the Conveyance Documents.

F. "Final System Plan" shall mean the Plan
prepared by the Association which became effective on
November 9, 1975, pursuant to Section 208(a) of the Rail
Act (a certified copy of which was filed with this Court
as Appendix O-A to the Certification), together with the
Supplemental Report to the Plan dated September 18, 1975,
described in Section 208(d)(1) of the Rail Act (a
certified copy of which was filed with this Court as
Appendix O-B to the Certification), the Official Errata
Supplement to the Plan dated December 1, 1975, described
in Section 208(d)(1) of the Rail Act (a certified copy
of which was filed with this Court as Appendix O-C to the
Certification), the Notice containing further
designations to the Plan, dated February 25, 1976,
described in Section 208(d)(3) of the Rail Act (a
certified copy of which was filed with this Court as
Appendix O-D to the Certification), and the document
filed as Appendix O-E to the Certification, which
document contains the further designations of rail
properties described in Section 208(d)(2) of the Rail Act.

SPECIAL COURT REPORTER          - 6 -              _  . _    *M-000068*

      G.  "Transferor" shall mean the person or persons identified as the Transferor, Grantor or Assignor in a Conveyance Document.

      H.  "Transferee" shall mean the person or persons identified as the Transferee, Grantee or Assignee in a Conveyance Document.

      I.  "Map Addendum" shall mean the collection of maps denominated "Map Addendum" which was submitted to this Court by the Association with and as a part of the Certification and Certification Supplement and is on file in the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.  Copies of maps from the Map Addendum which are referred to in the Conveyance Documents relating to a particular Transferor are also on file with the United States District Court having jurisdiction over such Transferor.

      J.  "Rolling Stock and Equipment Addendum" shall mean the collection of rolling stock and equipment inventory computer printouts denominated "Rolling Stock and Equipment Addendum" which was submitted on March 12, 1976, to this Court by the Association with and as a part of the Certification and is on file in the office of the

## SPECIAL COURT REPORTER

Clerk of this Court at the United States Courthouse in Washington, D.C. Copies of computer printouts from the Rolling Stock and Equipment Addendum which are referred to in the Conveyance Documents relating to a particular Transferor are also on file with the United States District Court having jurisdiction over such Transferor.

K. "Option" shall mean a Conveyance Document which grants to the Transferee identified therein the right to acquire designated rail properties from the Transferor identified therein in accordance with the terms and conditions set forth in such Document. For purposes of determining the period within which an Option may be exercised, the effective date of this Order shall be deemed to be 12:01 a.m. on April 1, 1976.

L. "Acknowledgment of Receipt and Acceptance of Conveyance Document(s)" shall mean the instruments, copies of which are attached to this Order as Addenda I and II, that are to be executed by the Transferees and delivered to the appropriate Transferors in accordance with the terms of this Order.

M. "Conveyance Date" shall mean 12:01 a.m. on April 1, 1976, except that, in the case of property acquired pursuant to the exercise of an Option,

SPECIAL COURT REPORTER _____ - 8 - _

"Conveyance Date," for purposes of paragraphs A(1) and
A(2) of Section 4 of this Order, shall mean the date on
which such property is conveyed to the Transferee
pursuant to the exercise of such Option.

Section 2.  <u>Execution and Delivery of Conveyance
Documents</u>

The trustee or trustees of each Transferor
identified in each Conveyance Document shall execute
(and, where indicated, shall acknowledge) and on or
before the Conveyance Date shall deliver such Conveyance
Document to the Transferee identified therein -- such
delivery to be effective as of the Conveyance Date.  Any
such Conveyance Document (or any Conveyance Document
delivered pursuant to the exercise of an Option) may be
executed, acknowledged, and delivered on behalf of the
trustee or trustees by any person or persons who has or
have been authorized to perform such acts on behalf of
the trustee or trustees by the United States District
Court or other court having jurisdiction over the
Transferor identified in such Conveyance Document.
Execution, acknowledgment and delivery of any Conveyance
Document in which The Connecting Railway Company is
identified as Transferor shall be made by The Connecting
Railway Company as Debtor in possession of its properties

SPECIAL COURT REPORTER

M-000071

("Connecting"). The execution and delivery of any Conveyance Document by or on behalf of a trustee or trustees or Connecting pursuant to this Order shall not constitute a waiver of any right that such trustee or trustees or Connecting may have to object to or challenge, in whole or in part, the conveyance of the property identified in such Conveyance Document or the terms and conditions of any such conveyance or Conveyance Document. The conveyance of all properties pursuant to this Section shall be subject to all applicable terms and conditions of the Conveyance Documents, the Rail Act and this Order, and each Transferor and Transferee shall faithfully and expeditiously comply with and fulfill all such terms and conditions.

Section 3. Acknowledgment of Receipt and Acceptance of Conveyance Document(s)

Concurrently with delivery from a Transferor of any Conveyance Document or Documents pursuant to this Order, the Transferee shall execute and deliver to such Transferor and forthwith file with the Clerk of this Court an Acknowledgment of Receipt and Acceptance of Conveyance Document(s) in the form attached hereto as Addendum I; except that when a Conveyance Document is delivered pursuant to the exercise of an Option, the

SPECIAL COURT REPORTER          - 10 -

M-000072

Acknowledgment of Receipt and Acceptance of Conveyance
Document(s) shall be in the form attached hereto as
Addendum II and shall specify the time at which such
Conveyance Documents were actually delivered.  In any
case in which a Transferee receives more than one
Conveyance Document from a particular Transferor, the
Transferee may deliver and file a single Acknowledgment
of Receipt and Acceptance of Conveyance Documents
referring to all of the Conveyance Documents received
from such Transferor.  The execution of any Conveyance
Document or the execution and delivery of any
Acknowledgment of Receipt and Acceptance of Conveyance
Document(s) by any Transferee pursuant to this Order, or
the execution and delivery of any other document pursuant
to the terms of such Acknowledgment of Receipt and
Acceptance of Conveyance Document(s), shall not
constitute a waiver of any right that such Transferee may
have to object to or challenge, in whole or in part, the
obligations and conditions imposed on such Transferee by
the terms of any Conveyance Document or the terms and
conditions of the conveyance of the property identified
in such Conveyance Document.

**SPECIAL COURT REPORTER**

- 11 -

M-000073

### Section 4.  Certain Terms and Conditions of Conveyance

Each conveyance of property pursuant to this Order shall, where applicable, be subject to the following terms and conditions:

A. **Allocation of Taxes, Assessments, Rents, License Fees, User Fees and Other Charges**

(1) **Allocation Over Time.** As between the Transferor and Transferee identified in any Conveyance Document with respect to rail property conveyed to a Transferee pursuant to this Order, the obligation, if any, for payment of

(a) any tax, assessment, license fee, or other charge imposed by a governmental authority on or with respect to any such property or any use thereof or thereon for any period of time or term within which the Conveyance Date falls, or

(b) any rent,.license fee, user fee or other charge imposed under or by virtue of any lease, license,

M-000074

easement, encumbrance or other
agreement that continues to attach
to such property after the
Conveyance Date,

shall be adjusted on a pro rata basis to the Date of
Conveyance so that

(i)   the Transferor is obligated for
any such payment as is
attributable to that portion of
such period or term preceding the
Conveyance Date, and

(ii)  the Transferee is obligated for
any such payment as is
attributable to the balance of
such period or term.

(2)   Allocation in the Case of Subdivided or
Aggregated Property.  In the case of any rail property
referred to in the preceding subdivision (1) that:

(a)   is part of a parcel of property
or an aggregation of property that
has been or is taxed, assessed or
otherwise charged as a unit for

M-000075

SPECIAL COURT REPORTER            - 13 -

a period of time or term within
which the Conveyance Date falls,
or

(b)   is part of a parcel of property
or an aggregation of property that
is subject to one or more leases,
licenses, easements, encumbrances
or other agreements that continue
to attach to such parcel or
aggregation of property after the
Conveyance Date,

the obligation for payment of any tax, assessment, rent,
license fee, user fee or other charge that is or becomes
payable with respect to such parcel or aggregation of
property for that part of such period of time or term as
follows the Conveyance Date shall be allocated to such
Transferee in the proportion that the value of such
property conveyed to such Transferee bears to the total
value of such parcel or aggregation of property, determined
as of the Conveyance Date; provided that, if any such
tax, assessment, rent, license fee, user fee or other
charge is attributable to the parts constituting such
parcel or aggregation of property on a basis other than the

M-000076

**SPECIAL COURT REPORTER**

- 14 -

relative values of such parts, such allocation shall be made on such other basis.  If the parties are unable to agree on the basis or method for allocating any such tax, assessment, rent, license fee, user fee or other charge, either or both of such parties may apply to this Court for an order determining the basis or method to be used for such allocation.

**B.  Pre-Recording Protection of Transferors and Transferees**

In the case of real property conveyed, or reserved and excepted from conveyance, in any Conveyance Document, on and after the Conveyance Date and until such Conveyance Document shall have been filed for record with respect to such property in each local jurisdiction in which such property is situated, no Transferor or Transferee identified in such Conveyance Document shall transfer or convey such property, in whole or in part, or create any lien or encumbrance on or with respect to such property, unless the instrument effecting such transfer or conveyance or creating such lien or encumbrance provides that such property is subject to any easement, encumbrance, right or benefit that may have been created or recognized in or by such Conveyance Document.

ATTACHMENT D, SHEET 15
M - 000077

SPECIAL COURT REPORTER                          - 15 -

C.  <u>Resignations of Representatives of the Trustees</u>

On and after Conveyance Date, the trustee or
trustees of each Transferor and Connecting shall, upon
the request of a Transferee, use his, their or its best
efforts to cause any person who is serving at the request
of such Transferor as a director or officer of another
corporation, partnership, joint venture, or other
enterprise, the stock ownership or other corporate
interest in which is conveyed from such Transferor to
such Transferee pursuant to this Order, to resign from,
or otherwise act in accordance with the lawful directions
of the Transferee with respect to, such person's position
as such director or officer; <u>provided, however</u>, that
nothing herein shall be deemed a restraint upon the
ability of any such person otherwise to resign from such
position as director or officer.

*M - 000078*

SPECIAL COURT REPORTER          - 16 -

Section 5.  <u>Correction of Errors</u>

    A.  <u>Correction of Errors by or on Application</u>
       <u>of Transferors and Transferees</u>

    To the extent necessary to

          (a)  carry out the intent of a
              Conveyance Document or to perfect
              a designation contained in the
              Final System Plan, or

          (b)  record or otherwise perfect any
              Conveyance Document delivered
              pursuant to this Order under any
              applicable statute, ordinance,
              rule or regulation,

each Transferor or Transferee shall perform, execute,

acknowledge, endorse and deliver any and all such further

acts, deeds, transfers, assignments, certificates and

other instruments as may be reasonably requested by any

Transferor or Transferee in order to convey, reconvey,

confirm, clarify, identify or more precisely describe the

properties designated to be conveyed in the Final System

Plan or the properties conveyed or reserved and excepted

from conveyance in any Conveyance Document (or intended

M- 000079

**SPECIAL COURT REPORTER**      - 17 -

so to be).  If such parties are unable to agree upon or effectuate such action as should be taken pursuant to this paragraph or the division of costs incident to such action, such party or parties may apply to this Court for such relief as may be appropriate; provided that no person shall apply to this Court for an order or other action under this paragraph A without concurrently serving the Association with notice of such application.

**B.   Retention of Jurisdiction**

This Court retains jurisdiction under Section 209(e) of the Rail Act.

**Section 6.   Certification of Documents to Transferors and Transferees**

Promptly after the entry of this Order, the Association shall deliver to each Transferor and Transferee a copy of the Conveyance Documents to which such Transferor or Transferee is a party together with each map and rolling stock and equipment inventory computer printout referred to in such Conveyance Documents and shall certify that such Conveyance Documents, maps, and printouts are true copies of the Conveyance Documents, maps, and printouts certified by

- 18 -

M~00008

**SPECIAL COURT REPORTER**

the Association to this Court and filed in the office of the Clerk of this Court.

**Section 7.  Issuance of Certified Copies**

Upon request of any Transferor or Transferee or any interested person and upon payment of such reasonable fee as may from time to time be established by the rules of this Court, the Clerk of this Court shall issue a certified copy of this Order together with a certified copy of any Conveyance Document requested by such person and shall certify that such Conveyance Document was certified to this Court by the Association and is identified in the files of this Court by the Document Number appearing on such certified copy of such Conveyance Document.

**Section 8.  Compilation and Deposit of Sets of Conveyance Documents**

The Association shall cause to be compiled complete sets of the Conveyance Documents (and the maps referred to in such Conveyance Documents) in the sequence listed in the Conveyance Document Schedules and in the form prepared for execution and delivery of such Conveyance Documents, and shall deposit two complete sets thereof with the Clerk of this Court on or before 12:00

M- 008081

**SPECIAL COURT REPORTER**          - 19 -

noon on March 29, 1976, and shall attest that each such
set contains true copies of all such Conveyance Documents
certified to this Court by the Association.


Henry J. Friendly
Presiding Judge


John Minor Wisdom
Judge


Roszel C. Thomsen
Judge


Date:  March 15, 1976

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

**I (a) PLAINTIFFS**

Consolidated Rail Corporation

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**    88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Charles H. Carpenter
Pepper Hamilton LLP
600 14th Street, N.W., Suite 500
Washington, D.C. 20005-2004
(202) 220-1200

**DEFENDANTS**

James T. Ray,
for the Estate of Harold F. Boyd, deceased

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**    88888
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

ATTORNEYS (IF KNOWN)

John J. Duffy, Esquire
Duffy and Associates
23823 Lorain Road, Suite 270
North Olmsted, OH 44070
(440) 779-6636

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

⊙ 3 Federal Question
(U.S. Government Not a Party)

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**⊙ E. General Civil (Other)**    OR    **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
defendant
☐ 871 IRS-Third Party 26
USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
Exchange
☐ 875 Customer Challenge 12 USC
3410
☐ 900 Appeal of fee determination
under equal access to Justice
☐ 950 Constitutionality of State
Statutes
☒ 890 Other Statutory Actions (if
not administrative agency
review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 USC §§ 2201-2202; 45 USC § 701 et seq.; Plaintiff is seeking a declaration concerning, and a stay of, state court litigation that infringes on this court's exclusive jurisdiction under the Rail Act

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES    NO |

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES    NO    If yes, please complete related case form.

DATE        SIGNATURE OF ATTORNEY OF RECORD

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.